JOSEPH KRCHNAVY V. STATE OF NEBRASKA.

FILED JANUARY 4, 1895.   NO. 6755.

43 337
43 410

43 337
f58 534
58 727

1. **Criminal Law:** ASSAULT WITH INTENT TO MURDER: IN-STRUCTIONS. In a prosecution for an offense which consists in the doing of an act accompanied by a specific intent as assault with intent to murder, it is not error to instruct that the accused is presumed to have intended the natural and proximate consequences of his voluntary acts; but such presumption should be limited to the actual results of the act proved.

2. ———: EVIDENCE OF INTENT. The law does not require in every case independent evidence of the particular intention. On the contrary the circumstances attending the principal act may be of such a character as to exclude every rational hypothesis except the existence of the specific intent charged.

3. ———: ———. The test in such cases is one of logic rather than one of law; and while the jury are at liberty, if the circumstances warrant, to infer the intention from the act, they are under no legal obligation to do so.

4. **Homicide:** CHARACTER OF WEAPON: QUESTION FOR COURT. Where a weapon and the manner of its use in the commission of an assault are such as to admit of but one conclusion in that respect, the question whether or not it is deadly, within the meaning of the law of homicide, is one of law and the court should take the responsibility of so declaring.

5. ———: ———: QUESTION FOR JURY. But where it may or may not be likely to produce fatal results according to the manner of its use, or the part of the body at which the blow is aimed, its character in that respect is one of fact for the jury.

6. **Instructions embodying the law of self-defense,** *held*, properly refused in the absence of evidence tending to show that the assault charged was justifiable on that ground.

ERROR to the district court for Saunders county. Tried below before WHEELER, J.

The facts are stated in the opinion.

*C. S. Allen, Good & Good,* and *J. K. Vandemark,* for plaintiff in error:

The trial court's eleventh instruction was wrong in stating that the law presumes a person intends the natural consequences of his act. (*State v. Neal,* 37 Me., 470; *State v. Stewart,* 29 Mo., 420; *Curry v. State,* 4 Neb., 545; *People v. Sweeney,* 55 Mich., 586.)

A hoe handle used to strike but once, is not a deadly weapon, and the court should not have assumed it was. The question was for the jury. (*People v. Comstock,* 13 N. W. Rep. [Mich.], 617; Thompson, Trials, sec. 2181.)

The act of defendant in striking one blow with a hoe handle, which might have caused death but did not, is not alone sufficient to justify the jury in finding an intent to murder. (*People v. Sweeney,* 55 Mich., 586; *Curry v. State,* 4 Neb., 545.)

The specific intent to murder must be proved. (Bishop, Criminal Law [3d ed.], sec. 761.)

*George H. Hastings, Attorney General,* for the state, cited: *Curry v. State,* 4 Neb., 545; *Smith v. State,* 7 So. Rep. [Ala.], 103; *Foster v. People,* 50 N. Y., 609; *State v. Alford,* 10 So. Rep. [La.], 887; *Evans v. Commonwealth,* 12 S. W. Rep. [Ky.], 767.

Post, J.

This is a petition in error and presents for review a judgment of the district court for Saunders county, whereby the plaintiff in error was convicted of an assault with intent to murder. The offense, it seems, was committed at a dance in a saloon in the village of Touhy on the 8th day of September, 1893. Of those present a number, including the prosecuting witness, Ganson Stoughton, had, during the evening, indulged freely in the use of liquor, and were, at the time of the assault, about two hours after midnight, ap-

parently intoxicated.    Shortly before the assault there was
a quarrel between Anton Krchnavy, a brother of the pris-
oner, and one Greever, which resulted in a scuffle on the
porch or sidewalk in front of the saloon.    The prosecutor,
according to the witnesses for the state, insisted that they
should go away from the saloon to fight, and, according to
the defendant's witnesses, he interfered to prevent others
from separating the combatants.    There is evidence tend-
ing to prove that during the scuffle above mentioned there
was some controversy between the prosecutor and Frank
Krchnavy, also a brother of the prisoner, during which
blows were exchanged by them.    They were soon separated
when Stoughton, according to the witness for the defense,
retired, saying, "You son of a b—, I'll fix you," and re-
turned a minute and a half or two minutes later with a
club or stick of some kind in his hand.    He said, presum-
ably addressing the prisoner and his brothers, "Now,
d—n you fellows, come on.    I'll fix you.    I'll knock your
brains out."    He made no attempt to strike, but retreated
backward from the porch eight or ten steps, when the pris-
oner, who had approached him from behind, struck him a
blow on the head with a garden hoe, instantly knocking
him down and fracturing his skull so that it became neces-
sary to remove fifteen or more pieces thereof.

The attack upon the judgment in the oral argument, and
also in the excellent brief submitted by counsel for the
prisoner, is directed in particular against the eleventh in-
struction given by the court on its own motion, as follows:
"The law presumes that all persons intend the natural and
probable consequences of their acts, and where it appears
that one person has assaulted another with a dangerous and
deadly weapon, the presumption is that he intends the nat-
ural and probable consequences of his acts.    If you believe
from the evidence, beyond a reasonable doubt, that the de-
fendant assaulted the witness Stoughton with a garden hoe,
struck him on the head with such force and violence as to

crush his skull, and further find from the evidence, beyond a reasonable doubt, that such assault was made purposely and maliciously, then, in such case, you would be justified in finding the defendant guilty as charged in the information."

1. The first objection to the above instruction is that it can only be interpreted to mean "that when one assaults another with a deadly and dangerous weapon, it raises a legal presumption that he intends to kill." It was said in *Curry v. State*, 4 Neb., 545, that "a person is presumed to do that which he voluntarily and willfully does in fact do; but if the intent is to be carried beyond the result actually produced by the acts of the accused, evidence must be introduced to justify the jury in so finding." The above is substantially the rule as stated in *Commonwealth v. Webster*, 5 Cush. [Mass.], 305, and may be accepted as the law of this state. We do not, however, interpret the rule to require in every case independent evidence of the particular intention. On the contrary, the circumstances attending the principal act may be of such a character as alone to exclude every rational hypothesis except the existence of the specific intent charged. According to the modern and more reasonable view the test in all such cases is a rule of logic rather than a rule of law; and while a direction to the effect that men are presumed to intend the natural and probable consequences of their voluntary acts is generally held unobjectionable, what is meant thereby is that the jury are at liberty, if the circumstances warrant, to infer the intent from the act. Such inference, in the language of Dr. Wharton, is not one of law but of probable reasoning as to which the court may lay down logical tests for the guidances of the jury, but can impose no positive binding rule. (Wharton, Criminal Evidence, secs. 735, 736.) Judged by that test it may be conceded that the proposition stated by the court is incomplete, and unless supplemented by other instructions, merits the criti-

cism to which it has been subjected.    But in another para-
graph the jury were cautioned as follows: "The force with
which a blow was struck, where it does not result in death,
is evidence bearing upon the question of the intent with
which the blow was struck.    But the fact that the blow
might have produced death is not conclusive evidence that
the assaulting party intended to kill, but is simply a fact to
be weighed and considered as evidence in determining the
intent."    By a third paragraph they were further cautioned
as follows: "You are instructed that the intent being one
of the principal elements of the crime charged against the
defendant, it is necessary for the state to prove beyond a
reasonable doubt that the assault was made upon the said
Ganson Stoughton with malice aforethought, or with the
intention previously formed to kill him, and if you enter-
tain a reasonable doubt of the existence of such intent, then
you must acquit the defendant of assault with intent to
murder."    Reading the several paragraphs of the charge
together we can conceive of no just ground for complaint
by the prisoner.    As a statement of the law it is above criti-
cism by him, and is, as we shall presently see, fully war-
ranted by the facts of the case.

   2. It is next contended that the instruction is erroneous,
in consequence of the assumption therein that a garden hoe
is a deadly weapon.    There is an apparent diversity of
opinion respecting the subject suggested.    The question
whether a weapon is deadly, within the meaning of the law
of homicide, is by some writers said to be one of fact for
the jury.    Mr. Bishop, on the other hand, says: "It [a
deadly weapon] is a weapon likely to produce death, or great
bodily injury.    In a case of doubt, the manner in which
it was used may be taken into the account in determining
whether or not it was deadly.    And when the facts are all
established, the question of whether a particular weapon
was deadly or not is of law for the court.    Yet practically,
as in most instances, the establishment of the facts awaits the

rendition of the verdict the jury must pass upon this question, under instructions from the court." (Bishop, Statutory Crimes, 320.) The doctrine of the well-considered cases may be thus summarized: Where the weapon in question and the manner of its use are of such character as to admit of but one conclusion in that respect, the question whether or not it is deadly, within the foregoing definition, is one of law, and the court must take the responsibility of so declaring. But where it may or may not be likely to produce fatal results, according to the manner of its use, or the part of the body at which the blow is aimed, its character is one of fact to be determined by the jury. By a reference to the instruction complained of it will be observed that a garden hoe is not therein declared to be *per se* a deadly weapon. The substance of the language used is that the jury would be warranted in finding that the weapon was in fact a deadly one, if satisfied beyond a reasonable doubt that the prisoner therewith maliciously struck the prosecutor a blow on the head with such force as to crush his skull, and that such blow was well calculated to produce death. In short, the character of the weapon was made to depend both upon the manner and the intention with which it was used. The instruction is therefore in strict accord with the rule stated. It is also unquestionably warranted by the evidence. Counsel, in their brief, speak of the assault as having been made with a hoe handle, an assumption unwarranted by the record. The only evidence with respect to the weapon is that it was a hoe of the ordinary kind, which had recently been used in mixing mortar. The blow was struck not with the handle, but with the back part, or iron shank which connects the steel blade with the handle, and lateral cuts, at right angles with the principal wound, indicate that the injury was produced both by the shank and the back part of the blade of the hoe. We must remember, too, that the prosecutor was struck on the back of the

head, not lightly, but evidently with considerable force, and that his life is probably due to the fact that the force of the blow was in some measure arrested by his hat.   The instruction is therefore not objectionable on either ground urged.   Indeed, it is probable, although not decided, that the court would have been warranted in charging, as a matter of law, in view of the circumstances attending the assault, that the hoe was a deadly weapon.

3.  Numerous instructions were asked bearing upon the subject of self-defense, and their refusal is also assigned as error.   At the conclusion of the argument we were strongly impressed with the soundness of that contention, but a careful reading of the record has convinced us that there is no evidence whatever to which such a charge could apply. It is not necessary in this connection to discuss at length the law of self-defense.   It is sufficient for present purposes that in order to lay a foundation for the submission of that subject there must be some evidence tending to prove that the act in question appeared to be necessary for the protection of the person of the prisoner or another.   The prisoner in the case at bar did not testify in his own behalf, and we have searched the record in vain for such foundation.   The prosecutor, it is true, was intoxicated and evidently abusive, but his attitude when assaulted was in no sense aggressive. Judged by the testimony for the prisoner, he appears rather to have been acting on the defensive and, as we have seen, was retreating backward from the persons in front of the saloon when he was struck from behind by the prisoner. There being no error in the rulings assigned, the judgment of the district court must be

AFFIRMED.