STATE OF NEBRASKA, APPELLEE, V. HERMAN R. JUNGCLAUS, APPELLANT.

126 N. W. 2d 858

Filed March 13, 1964.    No. 35594.

Gerald B. Buechler, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold L. Mosher, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

The defendant was convicted on two counts of the violation of the obscenity statutes of this state. The trial court imposed a fine of $250 on the first count and sentenced the defendant to serve 3 months in the county jail of Hall County on the second count. The defendant has appealed.

It is charged in Count 1 of the information that the

defendant did on or about April 4, 1963, in Hall County, Nebraska, unlawfully and willfully have in his possession, with the intent to sell, certain obscene, lewd, indecent, and lascivious books, pamphlets, papers, and photographs, to wit, certain magazines containing photographs of nude males and females, contrary to section 28-921, R. S. Supp., 1961. It is charged by Count 2 that defendant on the same date and place did unlawfully and willfully have in his possession for sale certain recordings and transcriptions used or intended to be used for producing or reproducing lewd and obscene songs, ballads, and other spoken and sung words, to wit, recordings identified by the following titles: "Stag Party Special Preview," "Wild Service Songs Preview," "Wild Party Songs Preview," "Nights of Love in Lesbos," "Erotica," "A Night in Bedlam," "Bert Henry in the Raw," and "The Erotic Delights of Lady C," contrary to section 28-920.01, R. S. Supp., 1961.

It is provided by section 28-926.07, R. S. Supp., 1961, that "the standard for judging obscenity to be applied as a guide by finders of fact in considering the evidence is whether to the average person the dominant theme of said material or conduct which is at issue in such civil or criminal proceedings, taken as a whole, appeals to the prurient interest, which is to excite lustful thoughts, or a shameful or morbid interest in nudity, sex, or excretion which goes substantially beyond the customary limits of candor."

The standard for judging obscenity as set forth in section 28-926.07, R. S. Supp., 1961, is a proper one. In Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498, the court held in substance as follows: It is vital that the standards for judging obscenity safeguard the protection of freedom of speech and press for material which does not treat sex in a manner appealing to prurient interest. Sex and obscenity are not synonymous. Obscene material is material which deals with sex in a manner appealing to prurient interest,

that is, material having a tendency to excite lustful thoughts. The standard for judging obscenity, adequate to withstand the charge of constitutional infirmity, is whether, to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to prurient interest. The foregoing holdings of the Supreme Court of the United States appear to have put to rest any question as to the correctness of the standards prescribed by section 28-926.07, R. S. Supp., 1961.

The evidence in this case shows that on April 4, 1963, the sheriff of Hall County, armed with a search warrant, searched the Target Grocery for obscene literature and materials. He was accompanied by two police officers of the city of Grand Island, the county attorney of Hall County, and the deputy county attorney. The defendant was in sole charge of the store at the time. The law enforcement officers examined the contents of a magazine rack situated in the store, a number of magazines kept in a cardboard box near the cash register, and a number of phonograph records sealed in their jackets which were displayed in boxes in the main part of the store. The officers took with them a part of the magazines and all of the phonograph records found on the premises. The materials taken are the basis of the prosecution in the instant case.

We have examined the magazines found in the Target Grocery. From cover to cover they are filled with photographs of nude persons, mostly females. The covers, front and back, likewise carry the photographs of nude women - a fact which indicates their contents and belies any statement by a possessor that their contents were unknown. The phonograph records, which were played in the presence of the jury, have been examined as to their content by this court. An expert witness testified that, in his opinion, the magazines and records, or some of each, convey to the average person the dominant theme, taken as a whole, which appeals

to the prurient interest, which is to excite lustful thoughts, or a shameful or morbid interest in nudity, sex, or excretion which goes substantially beyond the customary limits of candor. The testimony of the expert witness is authorized by section 28-926.08, R. S. Supp., 1961. After a consideration of the evidence, we conclude that it was ample to sustain the finding of the jury that the materials offered in evidence by the State were obscene.

Defendant contends that the evidence of possession for the purpose of sale is insufficient. The evidence shows that the Target Grocery was owned by Jungclaus Enterprises, Inc. At the time the search was made, defendant was in sole charge of the store. There is evidence that defendant was its manager and operator. When the sheriff served the search warrant, defendant was wearing a coat and apron commonly used by those engaged in the operation of a grocery store. There is no evidence that defendant was not engaged in its operation. The offending material was displayed in the store, some on a rack and some in cardboard boxes near the cash register. Several copies of each magazine were found, a clear indication that they were displayed for purposes of sale. From this evidence the jury could properly infer, as it did, that defendant was in possession of the obscene magazines for purposes of sale. The phonograph records were kept in a convenient place among other merchandise that was for sale. It is hardly conceivable that a person could be in possession of personal property without having some kind of custody or control over it, or could have it in his custody without some character of control or possession, or in his control without some measure of custody or possession. Phillips v. State, 154 Neb. 790, 49 N. W. 2d 698.

Closely associated with the question of possession is the question of intent. The defendant asserts that the proof as to the intent to sell obscene materials is insufficient to sustain a conviction. A seller of magazines

and phonograph records is ordinarily presumed to know what he is offering for sale, although it is not universally so. The operator of a book store, for instance, would not be presumed to know of every isolated obscene statement in the hundreds of books that he has for sale. But in a situation, as here, where the covers of the magazines, front and back, are occupied with pictures of nude women in various poses, it can hardly be said that the jury could not infer knowledge of their contents by the defendant and an intent to sell obscene materials.

With reference to the phonograph records, the defendant testified that he had never heard them played except in the courtroom at the trial. The denial of knowledge by the defendant of their contents is not a controlling factor. If it were, a prosecution of a violator of the statute would be well nigh impossible. The phonograph records were in covering jackets. The descriptive words on the jackets indicated clearly what their content is. They were put there for the purpose of indicating the nature of the contents to induce their sale to those who desired to purchase the dirt, filth, and sexual muck contained in them. The jury could properly infer from the evidence the intent of the defendant to engage in the sale of obscene phonograph records.

In State v. Brown, 174 Neb. 393, 118 N. W. 2d 332, this court said: "The law does not require independent evidence of the specific intent required. Krchnavy v. State, 43 Neb. 337, 61 N. W. 628. The intent with which an act is done is purely a mental process and difficult to establish by direct proof. It is generally a conclusion that must be drawn after a consideration of the actions of the defendant viewed in the light of all surrounding circumstances. Hoffman v. State, 164 Neb. 679, 83 N. W. 2d 357. Intent may be inferred from the nature of the act itself and the circumstances surrounding it. Young v. State, 127 Neb. 719, 256 N. W. 908." The evidence was clearly sufficient for the jury to infer that

defendant knowingly had obscene materials in his possession for the purpose of sale.

Defendant complains of the rulings of the trial court refusing to admit into evidence many magazines offered by him. The evidence shows that the law enforcement officers in carrying out their search selected but a few of the magazines which were in the store which were subsequently used as a basis of the charge filed in the instant case. It appears to be the argument of defense counsel that since the law enforcement officers, particularly the county attorney, selected and confiscated but a few of the magazines found, that those not taken were thereby legally declared not to be obscene. From this it is argued that since some of those not taken were as bad or worse than those taken, that those taken, for some reason beyond our comprehension, became freed of the charge of obscenity. We point out that defendant was charged with having obscene materials in his possession for the purpose of sale. The magazines were brought forth and offered in evidence against him. The question before the jury was whether or not the charge was true, that is, whether or not the magazines offered in evidence by the State were in fact obscene within the meaning of the charging statutes. Whether or not defendant had other magazines in his possession which were or were not obscene is wholly immaterial as a defense and the trial court very properly refused their admission in evidence.

Defendant's counsel further argues that what is obscene and what is not involves a most difficult decision. The trend of his argument is that there are materials which are clearly obscene and those which clearly are not, and that there is a gray area in between which is practically impossible of determination. He then argues that the confiscation of some materials and the leaving of others in the store of equal obscenity features, places all of them in the gray area, in which event a conviction cannot be sustained. The argument is an ingenious one,

but its persuasiveness is not appealing. It simply has no substance in fact. While it is true that the dividing line between what is lawful and what is unlawful cannot be left to speculation, it can properly be left to competent proof. We think that magazines, such as we have before us, are either obscene or not obscene under the statute. The line of demarcation between the two is definitely drawn by the statute. The fact that the line may be difficult to find in some cases does not mean it is not there. The burden of proof is on the State to establish beyond a reasonable doubt that the materials charged were in fact obscene within the meaning of the statute. It is for the jury to determine from all the evidence if it is of sufficient quantity and quality to sustain a conviction. If in its judgment the State has failed to show that the magazines are obscene under the applicable statute, it is its sworn duty to find the defendant not guilty. But the fact that law enforcement officers make a selection of a few allegedly obscene magazines from among many does not have the effect for which defendant contends. The sheriff, nor even the county attorney, does not give decency to obscene materials by selecting a few of many for the purpose of prosecution. Such issues are determinable by evidence submitted to a jury under proper instructions on the law by the court. The contention is without merit.

Defendant assigns as error the giving of instruction No. 5. This instruction tells the jury that whoever aids or abets any offense may be prosecuted and punished as if he were a principal offender. The evidence shows that the Target Grocery is owned by Jungclaus Enterprises, Inc. The purpose of the instruction was to tell the jury that if the business was owned and operated by the corporation, the defendant as the operator of the store could be punished as an aider or abettor. This is a correct statement of the law and it is in no way prejudicial to the rights of the defendant.

Defendant also assigns as error the giving of instruc-

tion No. 6. This instruction states the necessary elements to be proved in each count to sustain a verdict of guilty. The objection of the defendant is directed to that part of the instruction stating that to sustain a conviction at least one of the materials charged as obscene in each of the two counts was in fact obscene within the meaning of the statute. There is no error in this instruction. The possession of one magazine or phonograph record for the purpose of sale, found to be obscene, is sufficient to sustain a conviction.

Defendant complains of the failure of the court to instruct as to the meaning of the term "average person" as requested by defendant's tendered instruction No. 4. The words "average person" are words of common meaning which are readily understood by the jury. The opportunity of counsel to discuss the meaning of "average person" in his argument to the jury affords ample protection against any misuse of the term by the jury in considering the case.

We have examined the remaining instructions assigned as error, including those tendered by the defendant and not given, and we find no error in the trial court's determinations with respect thereto.

Defendant complains of the trial court's action in permitting the county attorney, while testifying, to interpose objections to questions asked of him by defense counsel. The record shows that the county attorney was handling the case for the State as was his duty. Defense counsel called the county attorney as a witness. The defendant, by calling the county attorney as a witness, does not disqualify him from handling the case as he chooses. Whether or not a deputy county attorney shall take over the case under such circumstances is the prerogative of the county attorney to determine, and not that of the court or opposing counsel. The trial court correctly ruled on defendant's objection on this matter.

Defendant complains of the amount of costs assessed

against the defendant. In assessing the costs the trial court included the following items: Meals for jurors, $23.35; cost of jury and mileage, first day, $148; and cost of jury and mileage, remaining 3 days, $219.60. The State attempts to sustain the above taxing of costs under section 29-2703, R. R. S. 1943, which states: "No costs shall be paid from the county treasury in any case of prosecution for a misdemeanor, or for surety to keep the peace, except as provided in section 29-2709." Section 29-2709, R. R. S. 1943, provides that no costs shall be allowed in misdemeanor cases unless the suit shall have been instituted with the consent of the county attorney, or, after being brought, he shall approve of such action in writing.

We find nothing in these sections of the statutes which authorize the taxing of meals, lodging, and mileage of jurors as costs in the action. The fact that the county is not required to pay costs in misdemeanor cases not brought or approved by the county attorney affords no basis for charging them as costs against a convicted defendant.

As early as Geere v. Sweet, 2 Neb. 76, the court said: "Costs are unknown to the common law. They are given only by statute, which may be changed at the will of the legislature. The recovery of costs must depend upon the statute law in force at the time the judgment was rendered."

In Langan v. Whalen, 77 Neb. 658, 110 N. W. 668, this court said: "We suppose it to be unnecessary to cite authority to the effect that nothing can be taxed as costs in an action except such items as are prescribed by the statute or are expressly authorized by the consent or agreement of the parties." See, also, City of Hastings v. Mills, 50 Neb. 842, 70 N. W. 381.

The rule as to the taxation of costs heretofore stated has been enlarged to some extent in certain types of civil cases. Higgins v. J. I. Case Threshing Machine Co., 95 Neb. 3, 144 N. W. 1037. But the costs in crim-

inal actions are statutory and, in the absence of a statute authorizing the taxing of specific items as costs, the power to do so does not exist. The trial court was in error in not sustaining defendant's motion to retax the costs by eliminating therefrom the cost of meals for jurors and the cost of the jury and mileage in the amount of $390.95. The judgment of the district court is modified by reducing the amount of costs assessed against the defendant by $390.95.

The record is free from prejudicial error. The defendant had a fair trial. The jury was properly instructed and the evidence sustains the verdict of the jury. The judgment of the district court is affirmed, except for the taxing of the costs, as hereinbefore noted.

AFFIRMED AS MODIFIED.