STATE OF NEBRASKA, APPELLEE, v. AMERICAN THEATER CORPORATION, A CORPORATION, DOING BUSINESS AS "PUSSY CAT THEATER," APPELLANT.

227 N. W. 2d 390

Filed March 13, 1975. No. 39622.

Robert Eugene Smith, Gilbert H. Deitch, and Stern, Harris, Feldman, Becker & Thompson, for appellant.

Clarence A. H. Meyer, Attorney General, and Ralph H. Gillan, for appellee.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Defendant appeals its conviction on four separate counts of selling obscene magazines. Defendant attacks the statute for vagueness and overbreadth; and contends that the requisite element of scienter was not charged nor proven; that the publications are not obscene as a matter of law; and that the trial court erred by im-

properly instructing the jury on the definition of obscenity and the standards by which obscene material is to be judged. We affirm.

On or about March 7 and 9, 1972, officers of the Omaha police department morals squad purchased four magazines which are the basis of the four counts herein. The magazines involved in the respective counts are: Count I, "Switch Hitters"; count II, "World of Love and Sex"; count III, "More than 7 Inches"; and count IV, "Odd Love".

In the magazine in count I, with two exceptions, there is no actual contact with the genitals in the pictures. The magazine, however, is clearly devoted to a lewd display of genitals in apparent preparation for various acts of sodomy. The written material is very descriptive of such acts.

The magazine in count II has photographs of nude men and women engaging in sexual intercourse, cunnilingus, fellatio, and masturbation. The written material, while not specifically descriptive of the photographs, is particularly lewd, vulgar, and obscene.

The magazine in count III consists entirely of pictures of young boys masturbating and committing various acts of sodomy. Some of the written material purports to give crude, lewd, and obscene quotations from 13- to 15-year-old boys.

The magazine in count IV is devoted to lesbianism. It portrays nude women depicting lesbian love scenes, with a majority of the pictures prominently displaying the genitals. The written material contains a description of an episode of sadomasochistic abuse.

Defendant's first assignment of error attacks the statute on the grounds of vagueness and overbreadth. In State v. Jungclaus (1964), 176 Neb. 641, 126 N. W. 2d 858, we defined obscene material as that which deals with nudity, sex, or excretion in a manner appealing to prurient interest. We there said: "The proper standard for judging obscenity is whether to the average person,

applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to prurient interest." We also defined "prurient interest" as being "such as excite lustful thoughts of a shameful or morbid interest in nudity, sex, or excretion which goes substantially beyond the customary limits of candor."

The question of the constitutional validity of our obscenity statute is no longer in issue. It has been specifically construed to comply with Miller v. California (1973), 413 U. S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419. In State v. Little Art Corp. (1974), 191 Neb. 448, 215 N. W. 2d 853, we held: "The Nebraska obscenity statutes are in full compliance with the criteria and standards required by recent Supreme Court decisions including Miller v. California."

Each of the four magazines are clearly embraced within the test delineated in Miller v. California, *supra*. The average person, applying contemporary community standards, would find each magazine taken separately appeals to the prurient interest. Each of them depicts or describes in a patently offensive way sexual conduct specifically covered by our state law, as authoritatively construed. A casual review of each of the magazines is sufficient to indicate that they were not intended to promote, and definitely lack, any serious literary, artistic, political, or scientific value. Actually, each magazine would meet the utterly "without redeeming social value" test of Memoirs if it were still applicable. Each of them is embraced within one of the two suggested standards enunciated in Miller. They either contain patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, or there is a patently offensive representation or description of masturbation, excretory functions, and lewd exhibition of genitals. If there is any serious literary, artistic, political, or scientific value in any of the four magazines, we are unable to find it. This, as we

understand it, is a minimum requirement to merit First Amendment protection.

Defendant further argues that the information did not charge and the State failed to prove the requisite element of scienter. Basically, defendant's argument is that the State is required to set forth precisely the degree of guilty knowledge a defendant is required to defend against. Section 28-921, R. S. Supp., 1971, provided in part: "Whoever knowingly sells or offers for sale * * * or otherwise circulates * * * or causes to be circulated * * * or has in his possession with intent * * * to otherwise circulate * * * or cause to be circulated * * * any obscene, lewd, indecent, or lascivious book * * *." The court in its instructions told the jury that before it could find the defendant guilty it must find that the State had met its burden in showing that the defendant "did through its agents or through its employees willfully and knowingly sell, offer for sale, or to otherwise circulate or publish" obscene material.

The use of the term "knowingly" as showing the requisite element of scienter when accompanied by proper instructions has been approved by the United States Supreme Court in Hamling v. United States (1974), 418 U. S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590: "We think the 'knowingly' language of 18 U. S. C. § 1461, and the instructions given by the District Court in this case satisfied the constitutional requirements of scienter. It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributes, and that he knew the character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law. Such a formulation of the scienter requirement is required neither by the language of 18 U. S. C. § 1461 or by the Constitution."

Here the defendant is a corporation, so the knowledge

must necessarily be that of its officers and employees. The police officers testified that the materials in question were enclosed in clear plastic covers and displayed on the shelves at defendant's place of business. One could not page through the magazines but could see the covers. Anyone looking at the front and back covers of the four magazines in question, in light of the descriptive titles of the magazines, would readily infer that the contents of the magazines were obscene.

We said in State v. Jungclaus (1964), 176 Neb. 641, 126 N. W. 2d 858: "A seller of magazines and phonograph records is ordinarily presumed to know what he is offering for sale, although it is not universally so. The operator of a book store, for instance, would not be presumed to know of every isolated obscene statement in the hundreds of books that he had for sale. But in a situation, as here, where the covers of the magazines, front and back, are occupied with pictures of nude women in various poses, it can hardly be said that the jury could not infer knowledge of their contents by the defendant and an intent to sell obscene materials." Though the standard for judging obscene materials has altered somewhat since the ruling in Jungclaus, we feel that the inference with regard to the knowledge of the contents of the material found in the defendant's possession, considering its nature, the manner of its display and sale, is still a proper one.

Defendant's third assignment of error relates to its contention that the magazines in question are not obscene as a matter of law. We have sufficiently discussed this heretofore. Even a cursory examination of the exhibits involved will show that they are hard core pornography as repeatedly described by the United States Supreme Court. They are obscene whether we use the Miller test or the Roth-Memoirs test. Applying the pre-Miller test, they are utterly without redeeming social value.

Defendant's last assignment of error complains that

the trial court erred by improperly instructing the jury on the definition of obscenity and on the standards by which obscene material is to be judged. Defendant argues that because the conduct for which it was prosecuted took place before June 21, 1973, the date of the Miller decision, it is being subjected to an ex post facto law because there was a change in the law, as interpreted, between the date of the offense and the date of the trial. In Hamling v. United States (1974), 418 U. S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590, the court specifically stated that Miller did not purport to make criminal conduct which had not previously been thought criminal, but had instead added a clarifying gloss to the prior construction and made the meaning of the federal statute more definite. Obviously if the ex post facto argument has any validity, it would have been necessary at the time of Miller to vacate all nonfinal convictions and dismiss all pending actions. The failure of the Supreme Court to require this is a specific refutation of the ex post facto argument.

In Miller the court noted that if the state law regulating obscene material is construed to conform "the First Amendment values applicable to the states through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary." As suggested heretofore, it makes no difference whether the magazines herein are judged under the Roth-Memoirs standards or the Miller standards. Under either test the magazines are indeed obscene. As stated in Hamling, the definition of obscenity is not a question of fact, but one of law. The word "obscene" as used in the statute is not merely a generic or descriptive term but a legal term of art. The legal definition of obscenity does not change with each indictment. It is a term sufficiently definite in legal meaning to give a defendant notice of a charge against him.

The difficulty with defendant's argument is that de-

fendant specifically requested that the jury be instructed on Miller standards. In the conference on instructions, defendant's counsel objected to some of the instructions because he contended that they contained a standard no longer applicable and because they did not conform to the definition of obscenity in Miller v. California, *supra*. It is clear that defendant not only chose but insisted upon being tried on the Miller standards and in having the jury so instructed. It is in no position to complain because the court followed its wishes. We have long held that error cannot be predicated on an instruction given at the request of the complaining party. Starkweather v. State (1958), 167 Neb. 477, 93 N. W. 2d 619.

The judgment of the District Court is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

On the constitutional issues involved under the obscenity statutes here, see my dissent in State v. Little Art Corp., 191 Neb. 448, 215 N. W. 2d 853. It should be noted also that the obscenity statutes here have now been repealed and replaced by sections 28-926.11 et seq., R. S. Supp., 1974.

The additional problem involved is one of statutory interpretation in turning a single transaction into multiple offenses. The majority opinion affirms the conviction of the defendant on four counts of selling an obscene magazine, and a maximum fine of $1,000 on each count. The record shows that the four magazines were sold and purchased in just two separate transactions. Each of the two transactions involved two different magazines, both of which were purchased by the same individual at the same time.

Section 28-921, R. S. Supp., 1971, provided: "Whoever knowingly sells * * * any obscene, lewd, indecent, or lascivious book, pamphlet, paper * * * shall, upon conviction thereof, be punished by a fine of not more than one thousand dollars nor less than fifty dollars, or by

imprisonment in the county jail not more than one year, or both; * * *."

It is unclear what the Legislature intended to declare where multiple pieces of obscene literature were sold in one transaction. To say the least, the statutory language is ambiguous in fixing the punishment. In 1955 in a case involving two counts of violating the Mann Act by transporting two women on the same trip in the same vehicle, Mr. Justice Frankfurter, speaking for the United States Supreme Court majority, determined that only one offense had been committed and said: "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this is not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes." Bell v. United States, 349 U. S. 81, 75 S. Ct. 620, 99 L. Ed. 905.

The principle has been extended to other federal penal statutes by the United States Supreme Court. In Castle v. United States, 368 U. S. 13, 82 S. Ct. 123, 7 L. Ed. 2d 75, the defendant was charged with five counts of knowingly and unlawfully transporting in interstate commerce five separate falsely made and forged money orders. The evidence was that the defendant personally

transported the money orders from Indiana to Texas on the same trip and at the same time. In a per curiam opinion the Supreme Court held that the principles enunciated in Bell v. United States, *supra*, were controlling and remanded the case for resentencing on the basis that the defendant was guilty of only one offense. To the same effect, see, State v. Welch, 264 Ore. 388, 505 P. 2d 910; Commonwealth v. Colonial Stores, Inc., 350 S. W. 2d 465 (Ky. App., 1961).

In the Fifth Circuit in United States v. Carty, 447 F. 2d 965 (1971), the court again followed the Bell rationale and held that a defendant charged on three counts of interstate transportation of stolen firearms arising out of the transportation of three separate firearms at the same time constituted only one offense and that the defendant could not be separately charged simply because three separate firearms were involved. See, also, United States v. Deaton, 468 F. 2d 541, cert. den., 410 U. S. 934, 93 S. Ct. 1386, 35 L. Ed. 2d 597.

In at least one state the principles of Bell have been embodied in a statute. See M. S. A. § 609.035. Under that statute, the Minnesota Supreme Court held that a defendant charged with exhibiting and selling 41 obscene photographs could be sentenced for only one offense. State v. Getman, 293 Minn. 11, 195 N. W. 2d 827, vacated on other grounds, 413 U. S. 912, 93 S. Ct. 3044, 37 L. Ed. 2d 1029.

The defendant in the case now before us was convicted and sentenced on four separate counts of selling an obscene magazine. There were just two separate sales and each involved two magazines. All doubts should be resolved against turning a single transaction into multiple offenses. The convictions and sentences on two counts here may have been proper, but the convictions and sentences on the other two counts were improper and should be vacated and dismissed.

CLINTON, J., responding to the dissenting opinion.

The "single transaction" "multiple offenses" question

dealt with in the dissent of McCown, J., was not raised by defendant either in the trial court or on this appeal. The majority opinion ought not to be interpreted as deciding the question raised by McCown, J., nor as avoiding an issue raised.