**Jerry HAGOOD and Dennis B. Malloy, Appellants (Defendants Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 3–1078A254.**

Court of Appeals of Indiana, Third District.

Oct. 3, 1979.

---

1. Bowen's certification as an Habitual Traffic Offender was not pursuant to IC 9–4–13–3(a)(3).

K. Richard Payne, Fort Wayne, for appellants; Robert Eugene Smith, Atlanta, Ga., of counsel.

Theodore L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Defendants-appellants Jerry Hagood and Dennis B. Malloy appeal their convictions of distributing obscene matter for consideration for which they were fined $5,000 each. Their appeal raises these issues:

(1) whether the exhibits are obscene;

(2) whether the trial court erred in failing to order separate trials *sua sponte*;

(3) whether there was sufficient evidence that the defendants knew the nature of the items sold;

(4) whether certain testimony inflamed and prejudiced the jury;

(5) whether IC 1971, 35–30–10.1–6 (Burns Code Ed.) is unconstitutionally vague; and

(6) whether the trial court erred in denying their motions to dismiss.

On October 3, 1977, Detective Barry Horman entered the Main Street Swingers World Adult News and Peep Shows in Fort Wayne, Indiana and purchased a magazine entitled "Throat" and a film "Swedish Erotic Bubble Bath" from Malloy for $28.08. That same day, Detective Sam Revett entered the Erotica House in Fort Wayne and bought a magazine entitled "Housewives and Harlots" and a film called "der geiler neger hausdiener" from Hagood for $26.

Defendants first argue that the four exhibits sold can not be classified as obscene and therefore are constitutionally protected under the First Amendment. The present obscenity guidelines in this state are codified in IC 1971, 35–30–10.1–1(c) (1978 Burns Supp.). A work is obscene if:

"(1) The average person, applying contemporary community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex;

"(2) The matter or performance depicts or describes, in a patently offensive way, sexual conduct; and

"(3) The matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value."

Furthermore, sexual conduct is defined as:

"(i) sexual intercourse or deviate sexual conduct; (ii) exhibition of the uncovered genitals in the context of masturbation or other sexual activity; (iii) exhibition of the uncovered genitals of a person under sixteen [16] years of age; (iv) masochistic abuse; or (v) sexual intercourse or deviate sexual conduct with an animal." IC 1971, 35–30–10.1–1(d).

State's Exhibit # 1 is an 8 mm color film entitled "Swedish Erotica Bubble Bath." The jacket containing the reel depicts a woman performing fellatio upon a man. On the side of the jacket is the following comment: "WARNING DO NOT BREAK THIS SEAL UNLESS YOU ARE A CONSENTING ADULT WHO WISHES TO VIEW A SEXUALLY EXPLICIT FILM." The film itself graphically portrays various acts of sexual intercourse, fellatio, and cunnilingus with close-up detail of genitalia.

The cover of State's Exhibit # 2, a magazine labeled "Throat", has a photograph of a woman fellating an erect male penis. The magazine bears a $10 price and the cover has the following printed on it: "16 PAGES OF GRAPHIC COLOR. NOT FOR SALE TO MINORS." Along with textual material purporting to relate to the illustrations, the magazine contains numerous color and black-and-white photographs showing people engaged in acts of fellatio, cunnilingus, and sexual intercourse. Again, the pictures explicitly focus on genitalia.

State's Exhibit # 4, the film "der geiler neger hausdiener", depicts acts of sexual intercourse, fellatio, and cunnilingus between two women and a man with extreme close-ups of their genitals. The jacket of the film suggests group sex.

The front cover of "Housewives and Harlots" portrays a woman presumably masturbating with the hose of a vacuum cleaner. In addition to its $5 price, the cover also bears the phrases "Suburban Sprawl", "Morning Fling", and "Wanton Wife", "Have you ever wondered what goes on in suburban U.S.A. after the men all leave for work? If you think your swinging sex at the office is something, wait until you read what is inside this magazine . . . Wow!!!!!" Along with some innocuous text, the magazine contains approximately 35 photographs of nude and partly clad women masturbating.

■ Taken as a whole, these exhibits clearly appeal to a prurient interest in sex and nudity. In their photographs, they explicitly portray in a patently offensive manner sexual intercourse and deviate sexual conduct. These pictures include the exhibition of uncovered genitals. The exhibits lack serious literary, artistic, political, or scientific value despite the inclusion in the magazines of some insignificant text. These publications are therefore obscene.

■ Defendants also insist the trial court erred in failing to order separate trials for

them *sua sponte.* The record does not indicate that either defendant moved for a separate trial. It has been recently settled that a trial court does not have a duty to order separate trials *sua sponte. Young v. State* (1978), Ind.App., 373 N.E.2d 1108. Accordingly, defendants' argument is without merit.

Defendants next contend there was no proof establishing that they had knowledge of the nature and contents of the magazines they sold. Knowledge by the seller is an essential element of a conviction for distributing obscenity. IC 1971, 35–30–10.1–2 (1978 Burns Supp.). However, *scienter* like any other legally material fact may be proved by circumstantial evidence. *Schroer v. State* (1974), 159 Ind.App. 522, 307 N.E.2d 887.

In other jurisdictions scienter in the sale of obscene materials has been inferred from evidence that a clerk saw the cover and one inside page of a magazine (*State v. Hull* (1976), 86 Wash.2d 527, 546 P.2d 912); evidence that an officer showed a clerk the front and back covers of a magazine where the covers had explicit photographs of sexual activity along with a $10 price (*State v. Ward* (1974), Mo.App., 512 S.W.2d 245); and sale by a clerk of a magazine whose front and back covers, especially in light of their descriptive titles, would create an inference as to the nature of their contents. *State v. American Theatre Corp.* (1975), 193 Neb. 289, 227 N.W.2d 390.

Here, the respective businesses where defendants were employed displayed artificial penises and vaginas, films, books, and magazines which depicted unclad men and women engaging in varied forms of sexual activity. Malloy testified that he occasionally placed plastic coverings on magazines in stock and that he would have glanced at the covers of items purchased when he rang the sales up on the cash register. Hagood stated that when new supplies arrived, he covered them in plastic bags and put them on the shelves. From these facts, the jury could have inferred knowledge on defendants' part of the nature and content of the four exhibits.

Defendants further argue that the trial court erred by allowing the State to cross-examine Hagood concerning the novelty items sold in the Erotica House. Hagood testified without objection that the store contained magazines, paperback books, films, and novelties such as artificial vaginas and penises. This testimony is asserted to have inflamed and prejudiced the jury in arriving at its verdict.

An error not raised by proper objection during the trial will not be reviewed on appeal unless the failure to consider the alleged error would deny the defendants fundamental due process. *Land v. State* (1977), Ind.App., 367 N.E.2d 39. There is no such denial of due process here.

One of the material issues disputed by the parties was whether defendants had knowledge of the character and nature of the items sold. Hagood's testimony was probative on this point.

Defendants also assert that IC 1971, 35–30–10.1–6 (Burns Code Ed.) is unconstitutionally vague because it failed to give them adequate notice of the adversary hearing called to determine probable obscenity. They urge that the allegedly ambiguous wording of this provision deprived them of the opportunity to apply for an adversary hearing. The statute at issue reads:

"At any time after seizure, or the obtaining of evidence by purchase, and prior to trial, the state, defendant, owner, or other party in interest of any matter seized or purchased, may apply for and obtain a prompt adversary hearing for the purpose of obtaining a preliminary determination of probable obscenity. If evidence has been obtained by purchase, the court shall direct the clerk of the court to issue notice to the defendant informing him or her of the availability of a prompt adversary hearing prior to the issuance of an arrest warrant. If the court determines at said hearing that there is probable cause to believe that the matter is obscene, the matter shall be held as evidence, and an arrest warrant may be

issued for the arrest of the defendant. Provided, further, if the defendant, owner or other party in interest of any matter seized or purchased shall not apply for a prompt adversary hearing within five [5] days after the seizure occurs or within seven [7] days after notice is issued by the clerk, an arrest warrant may be issued for the arrest of the defendant." (Emphasis added.)

Defendants' attack is focused on the underlined portion of the statute. They claim that the trial court should have notified them regarding the availability of a prompt adversary hearing.

■ It seems apparent that the statute was designed to provide the mechanism for an adversary hearing to determine probable obscenity before trial. That purpose was served here since such a hearing was held pursuant to the State's request at which both defendants appeared accompanied by counsel. The portion of the statute singled out by defendants contemplates a situation where an arrest warrant is to be issued for one who has sold allegedly obscene matter but no hearing is requested by the State. Under these circumstances, defendants should be notified that a prompt adversarial hearing is available if requested within the prescribed time. Notifying defendants of this right where the State has not requested a hearing may obviate the need for an arrest since the court, if called upon by a defendant, may find that there were not reasonable grounds to believe the matter was obscene. The statute is clear in its import and is therefore not unconstitutionally vague.

Lastly, defendants maintain the trial court erred in denying their motions to dismiss because there was no valid Indiana obscenity statute in effect at the time they were charged with distributing obscene matter for consideration. The basis for this

alleged error is predicated on the fact that an Allen County Superior Court Judge had declared the 1975 obscenity statute unconstitutional.[1] Thus, it is argued, when the General Assembly amended the statute in 1977, there was no statute to amend. Consequently, the trial court could not entertain jurisdiction over the subject matter of this suit.

*Denney, Clerk, et al. v. State, ex rel. Basler* (1896), 144 Ind. 503, 42 N.E. 929 is persuasive in this regard. There the Indiana Supreme Court was called upon to adjudicate the constitutionality of an apportionment statute. The court opined:

"To all the objections thus made to the constitutionality of the apportionment act of 1893, counsel for appellee make but one reply. They gravely contend that the constitutionality of the act of 1893 has been adjudicated, and the act declared constitutional. This contention is based upon the judgment of the Marion circuit court in the case of *Wishard v. Lenhart*, to which we have heretofore referred and the appeal from which judgment (No. 17,385) was dismissed in this court, on motion of the appellant, November 27, 1894. The purpose of that action was to test the constitutionality of the apportionment act of 1893; and by the judgment of said circuit court, rendered upon demurrer to the complaint, the act was, in effect, held to be a valid law. At furthest,—and we should hesitate to give it that force without special plea,—that decision could be controlling only within the jurisdiction of the court making it, and between the parties to that suit. The binding force of such a decision, as said in 5 Chi. Law J. 863, quoting from Judge Cooley, goes only to this extent, namely, 'A decision once made in a particular controversy, by the highest court empowered to pass upon it, is conclusive upon

---

1. Judge Celarek found that IC 1971, 35–30–10.-1–4 (Burns Code Ed.) violated the Equal Protection Clause of the Fourteenth Amendment because it exempted certain classes from prosecution. He further held that section unseverable and declared the entire statute unconstitutional. In *State v. Vore* (1978), Ind., 375 N.E.2d 205, the Indiana Supreme Court dismissed the State's appeal of Judge Celarek's decision on the grounds that since during the pendency of the appeal the Legislature amended the obscenity statute deleting the exemption section, the appeal was rendered moot.

the parties to the litigation and their privies;' and again, 'The doctrine of stare decisis, however, is only applicable in its full force within the territorial jurisdiction of the court making the decision.' Indeed, it is by no means clear how it was intended by counsel that the judgment here referred to should be treated as a former adjudication of the questions at issue in the case at bar. In the first place, the judgment has not been set out in the complaint, nor has it been in any way specially pleaded. Neither has it been pleaded on appeal, even if such plea could be made on appeal. *Eckert v. Binkley,* 134 Ind. 614, 33 N.E. 619, and 34 N.E. 441. But, even if such judgment were pleaded, it would seem that there could be no question of former adjudication entertained, as counsel urge. 'Before the rule of former adjudication can be invoked, it must appear that the thing demanded was founded upon the same cause of action; that it was between the same parties, and found for one of them, against the other, in the same quality. The parties must not only be the same, but must also be suing in the same right.' *Kitts v. Wilson,* 140 Ind. 604, 39 N.E. 313. See the learned work of Judge Van Fleet on Former Adjudication (chapter 11), and generally. It is enough, on this feature of the question, that in the case in the circuit court, Albert W. Wishard was the party plaintiff, while in the case at bar the plaintiff was the state of Indiana, on the relation of Ferd E. Basler." 42 N.E. at 939.

■ The decision by another Allen Superior Court judge decreeing the 1975 obscenity law unconstitutional was binding only upon the parties to that suit. Decisions not addressed to the general public should not influence the actions of those not parties to the proceeding in which it was rendered until it is published in the reports provided by law. *Herron v. Whitely, etc., Castings Co.* (1910), 47 Ind.App. 335, 92 N.E. 555. By analogy, a decision by one Superior Court judge does not bind another Superior Court judge since the former decision is not published for the benefit of the general public. The trial judge's actions in *State v. Vore, supra,* did not strike down the 1975 obscenity statute. Consequently, defendants' motions to dismiss were properly overruled.

Finding no basis for reversal, the judgment of the trial court must be affirmed.

Affirmed.

STATON, J., concurs.

GARRARD, P. J., dissents with opinion.

GARRARD, Presiding Judge, dissenting.

I dissent for the reasons I have stated in *Ford v. State* (1979), Ind.App., 394 N.E.2d 250.