STATE OF NEBRASKA, APPELLEE, V. LUTHER ARTHUR FOX, ALSO KNOWN AS RONALD WILSON, APPELLANT.

222 N. W. 2d 121

Filed October 10, 1974. No. 39376.

Frank B. Morrison, Sr., Stanley A. Krieger, and Ivory Griggs, for appellant.

Clarence A. H. Meyer, Attorney General, and Terry R. Schaaf, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and BLUE, District Judge.

CLINTON, J.

Defendant was found guilty by a jury on a charge of having, on April 7, 1973, uttered a forged check. He was sentenced to a term of 5 to 20 years in the Nebraska Penal and Correctional Complex. On this appeal he asserts the insufficiency of the evidence to support the verdict. This contention rests on two propositions: (1) The evidence does not show he was involved in a forgery; and (2) the evidence does not show that the

defendant knew the instrument was forged. It is not denied that the defendant uttered the instrument by endorsing it as payee and delivering it to a motel at which he was registered. The check was accepted by the motel and defendant received cash in payment.

A summary of the evidence is necessary. The check in question was dated April 7, 1973, and drawn upon the account of "Moores Skelly," which name was imprinted on the check. Evidence shows that that service station business was owned and operated by James L. Moore. The amount of $62.50 was both typed and imprinted by a check protector. The instrument bore the typed alias of the defendant, Ronald Wilson, as payee. It was under this name that he had registered at the motel. When negotiated by the motel it was returned by the bank marked returned unpaid and a stamp thereon was checked for a signature defect.

Moore, who testified for the State, stated that the signature of the maker was not his and had not been authorized by him; that the check was one of a number of blank checks which were missing from his desk in his place of business; that he did not own or use a check protector or typewriter and never used such instruments in filling out his checks; and that he had not made the check in question and had not given it to the defendant, the payee thereon. Moore's testimony also indicated that the defendant, an occasional customer of the station, had been in the room where the checks were kept during the period before discovery that the checks were missing.

Upon the arrest of the defendant he executed an authorization for the search of his room. The search disclosed, among other things, a quantity of consecutively numbered Moores Skelly checks, some of which bore the purported signature of James L. Moore as maker, but were otherwise blank. Other checks were completely blank. Moore identified these checks as

those missing from his place of business; he stated that the signatures were not his nor authorized by him; and that he had never given the checks to the defendant. The defendant testified that the check involved had been given to him by Moore in payment for service to be rendered, apparently in connection with a detective agency he was about to form and which he gave as the reason for his presence in Omaha. The defendant denied any knowledge of the presence of the other checks in his motel room and related circumstances which suggested that these checks had been planted by Moore or someone else because the defendant had refused to carry out an illegal enterprise in which Moore and another party, an attorney named Williams, had solicited his help. Both Moore and Williams, although admitting slight social or business acquaintance with the defendant, denied the relevant portions of the defendant's testimony.

Four checks of businesses or professions located outside Omaha were also found in the search of the defendant's room. Three of these were for substantial sums of money and had been completed in a manner similar to that of the check in question. These three checks were purportedly made by and drawn upon the account of a Minneapolis attorney. The defendant claimed they had been delivered to him by Williams. This Williams flatly denied. The fourth check was that of a Des Moines drug company and was blank except for the signature of a purported maker.

This state of the evidence presented a factual determination for the jury which was, under proper instructions, resolved against the defendant.

The statute defining the offense of uttering a forged instrument is as follows: "(2) whoever shall utter or publish as true and genuine or cause to be uttered or published as true and genuine or shall have in his possession with intent to utter and publish as true and

genuine, any of the above-named false, forged . . . matter . . . knowing the same to be false, altered, forged . . . with intent to prejudice, damage or defraud any person . . . ." § 28-601, R. S. Supp., 1972. The elements of the crime of uttering a forged instrument are: (1) The offering of a forged instrument with the representation by words or acts that it is true and genuine; (2) knowing the same to be false, forged, or counterfeited; and (3) with intent to defraud. 37 C. J. S., Forgery, § 37, p. 57.

The defendant asserts that "writing by Mr. Fox has not been proven." He seems to assume there must be proof that the utterer was also the forger. He relies on State v. Addison, 191 Neb. 792, 217 N. W. 2d 468. Addison stands for no such proposition. That case simply pointed out that the proof of the forgery in the case before it was incomplete because there was no proof that the signature was not authorized. It then went on to point out how that deficiency might have been remedied. As we pointed out in State v. Huffman, 186 Neb. 809, 186 N. W. 2d 715, "forging and fraudulently uttering the same instrument if done by the same person constitute but one crime." The utterer need not be the forger. 37 C. J. S., Forgery, § 37, p. 57.

With reference to the defendant's second contention, there was, of course, sufficient circumstantial evidence to prove that the defendant knew the instrument was forged—indeed enough to permit a finding, had it been necessary, that he was the forger. An essential element of a crime may be proved solely by circumstantial evidence. State v. Ortiz, 187 Neb. 515, 192 N. W. 2d 151; State v. Lowrey, 187 Neb. 451, 191 N. W. 2d 600.

In this case, if the jury chose, as it did, to believe the evidence in the State's case, it was justified in finding that the defendant knew of the falsity of the instrument he passed. The checks found in the defendant's room, some signed and some unsigned, cannot be accounted for

upon any rational theory which does not include the defendant's knowledge of their falsity. State v. Watson, 182 Neb. 692, 157 N. W. 2d 156.

AFFIRMED.