STATE OF NEBRASKA, APPELLEE, V. GEORGE MILLS, APPELLANT.

258 N. W. 2d 628

Filed October 19, 1977. No. 41181.

Charles Plantz, for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

In an amended information filed in the District Court for Sheridan County, George Mills, the defendant and appellant herein, was charged with uttering a forged bank check under section 28-601, R. R. S. 1943; and with being a habitual criminal under section 29-2221, R. R. S. 1943. Trial commenced on August 16, 1976, before a jury, which found the defendant guilty of uttering a forged bank check. After a separate hearing before the trial court on the charge of being a habitual criminal, as provided for in section 29-2221 (2), R. R. S. 1943, the defendant was found guilty on that charge. Defendant's motions for new trial on both charges were overruled, and he was sentenced to a term of 10 years imprisonment in the Penal and Correctional Complex pursuant to section 29-2221, R. R. S. 1943. Defendant has now appealed to this court, contending that neither conviction was sustained by sufficient evidence, that his motions to dismiss the charges should have been sustained, and that the trial court erred in over-

ruling his motions for new trial. We affirm the judgment of the District Court.

The facts relevant to this appeal are as follows. On April 24, 1976, the defendant and several of his acquaintances traveled to Whiteclay, Nebraska. They had been drinking, and the defendant testified that he was intoxicated. They drove to the Jumping Eagle Inn, where the defendant cashed a $30 check, and bought some beer. The check, introduced in evidence as an exhibit, was payable to the order of the defendant, and the drawer was purportedly one Herbert Hauck. Under the drawer's signature, the word "Lease" was written. A proprietor of the Inn, Mrs. Lillie Norman, cashed the check after the defendant endorsed it in her presence. Mrs. Norman testified the defendant told her that his "leasor" had just given him a check. She also stated that the defendant did not appear to be intoxicated at the time he cashed the check.

An employee of the bank on which the check was drawn testified that Herbert Hauck had no account at that bank. Herbert Hauck, a rancher in the area, testified that he did not write the check, that he had no account in the bank on which it was drawn, that he did not know the defendant prior to the preliminary hearing in this case, and that he does not lease any land from the defendant.

The defendant admitted cashing the check, but testified he did not know that the drawer's name was forged. He stated that one of his companions in the car, whom he did not know, gave him the check to buy beer, and that he thought the person was Hauck. Defendant also stated that he thought the person who gave him the check went by the name of "Running Hawk," and that he assumed that the check was good. The defendant admitted that he owns no land which he leases, and could not recall telling Mrs. Norman that he had just acquired the check from his "leasor."

After the jury returned a verdict of guilty on the

charge of uttering a forged bank check, defendant moved for a new trial on various grounds, including the ground of accident or surprise. Defendant's attorney submitted an affidavit in support of the motion, which is summarized as follows. As part of his preparation for trial, defendant's counsel engaged an investigator to interview potential witnesses, including Joe Charging, who was one of defendant's companions on the day the check was cashed. Charging allegedly gave the investigator a statement which was corroborative of the testimony given by the defendant at the trial. Although Charging was subpoenaed, defendant's attorney was unable to locate him for a personal interview prior to trial. Charging appeared on the day of the trial, but at that time made statements which contradicted his prior statement to the investigator. For tactical reasons, defendant's attorney did not call Charging to testify. Defendant's attorney stated that he had not attempted to locate other witnesses because he had relied on the statements made by Charging to the investigator, and therefore was unable to produce any testimony at trial other than defendant's testimony. It is contended that the above situation resulted in accident or surprise which ordinary prudence could not have guarded against, and was not due to neglect or lack of diligence. There is no indication in the record that the defendant or his attorney requested a continuance before or during trial due to the alleged accident or surprise. Defendant's motion for new trial was overruled by the trial court.

Two hearings were held on the habitual criminal charge. At the first hearing, defendant was found to be a habitual criminal, however his motion for new trial on that issue was sustained. After a second hearing, the court again found defendant to be a habitual criminal, and his second motion for new trial was overruled.

The primary evidence consisted of authenticated

judicial records of the United States District Court, District of South Dakota. The records showed that in 1968 the defendant was convicted of assault of an employee of the United States government, and sentenced and committed to imprisonment for a period of 3 years, although the sentence was later reduced by 3 months to a period of 2 years and 9 months. The records also showed that the defendant was convicted of unlawful transportation of firearms in interstate commerce in 1972. Defendant was sentenced and committed to imprisonment for a period of 4½ years upon this conviction.

Also introduced in evidence was a certified copy of FBI records which reflected convictions, for the crimes described above, of one George Mills. These records contained fingerprints which were compared with fingerprints taken from the defendant in connection with the crime charged in the present case, and an expert witness testified that the fingerprints were identical. Defendant presented no evidence at the hearing on the habitual criminal charge.

We first address the question of whether the evidence was sufficient to sustain defendant's conviction of uttering a forged bank check. It must be noted at the outset that in determining the sufficiency of the evidence to sustain a conviction in a criminal prosecution, it is not the province of this court to resolve conflicts in the evidence, pass upon the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence, as such matters are for the jury. State v. Brown, 195 Neb. 321, 237 N. W. 2d 861 (1976). The verdict of a jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. State v. Johnsen, 197 Neb. 216, 247 N. W. 2d 638 (1976).

Section 28-601, R. R. S. 1943, provides that whoever shall utter or publish as true and genuine or cause to be uttered or published as true and genuine a forged bank check, knowing the same to be false, altered,

or forged, with intent to prejudice, damage, or defraud any person, shall be imprisoned in the penal complex not less than 1 nor more than 20 years. One may be guilty of uttering a forged instrument although he was not the forger. State v. Fox, 192 Neb. 424, 222 N. W. 2d 121 (1974). Knowledge that the instrument is forged, and intent to prejudice, damage, or defraud another person are clearly elements of the crime of uttering a forged instrument. § 28-601 (2), R. R. S. 1943; Nelson v. State, 167 Neb. 575, 94 N. W. 2d 1 (1959); State v. Fox, *supra*. Defendant contends the State did not produce sufficient evidence to prove beyond a reasonable doubt that the defendant had knowledge the check was forged, and that he had the intent to prejudice, damage, or defraud the proprietors of the Jumping Eagle Inn. This contention is without merit.

Intent can rarely be established by direct proof, and must be inferred from the nature of the act itself and the circumstances surrounding it. State v. Jungclaus, 176 Neb. 641, 126 N. W. 2d 858 (1964). The meaning of "knowingly" in a criminal statute commonly imports a perception of facts required to make up the crime. R. D. Lowrance, Inc. v. Peterson, 185 Neb. 679, 178 N. W. 2d 277 (1970). Knowledge, like intent, may be inferred from the circumstances surrounding the act. State v. Jungclaus, *supra*. Therefore the question presented is whether the jury could properly infer knowledge and intent on the part of the defendant from the circumstances surrounding the cashing of the forged check by the defendant.

There is no question in this case that the defendant cashed a forged check, and that the word "lease" was written on the check under the drawer's signature. Mrs. Norman testified as follows in regard to what the defendant told her when he cashed the check: "He said that he had been down to Rosebud for a little while and came back and that his leasor owed him some money. So, he had stopped and

picked up his check. * * * He asked if we could cash the check that he had got from his leasors." Defendant admitted at trial that he owned no land which he leased. In view of the circumstances of this case, this evidence was sufficient to support the inference and finding by the jury that the defendant acted knowingly and with intent to prejudice, damage, or defraud the Normans. Although the defendant stated that he did not know that the check was forged, and that he had no intention of cheating the Normans, it is the province of the jury to weigh the credibility of witnesses and judge the plausibility of explanations. State v. Brown, *supra*. The evidence was sufficient to send the case to the jury, and defendant's contention to the contrary is without merit.

Defendant's next contention is that it was error to overrule his motion for new trial on the ground of accident or surprise. Section 29-2101, R. R. S. 1943, provides that a new trial may be granted for the reason of "accident or surprise which ordinary prudence could not have guarded against." The affidavit supporting defendant's motion, as required by section 29-2102, R. R. S. 1943, has previously been summarized.

Essentially, defendant's claim is that he did not have sufficient time to procure witnesses who would corroborate his testimony because of the "surprise" of one potential witness changing a prior statement shortly before trial. There is no indication in the record, however, nor in defendant's brief, that there are in fact other potential witnesses who could be produced at a second trial. Defendant has not made a showing as to what such witnesses, if they do exist, would testify to at a second trial. Finally, defendant made no showing that ordinary prudence could have guarded against the alleged "surprise" other than a statement by his attorney that no other potential witnesses were located because of the reliance on Joe Charging's original statement to the investigator.

A motion for new trial pursuant to section 29-2101, R. R. S. 1943, is addressed to the sound discretion of the trial court, and its ruling will not be disturbed in the absence of a showing of abuse of discretion. State v. Crawford, 195 Neb. 181, 237 N. W. 2d 140 (1976); State v. Haynes, 186 Neb. 238, 182 N. W. 2d 199 (1970). Under the facts of this case, it cannot be said that the trial court abused its discretion in overruling defendant's motion. There was no convincing showing that the alleged "surprise" could not have been guarded against by the exercise of ordinary prudence. Furthermore to warrant the granting of an application for a new trial, it must appear that the moving party has been injured by the surprise, and that if a retrial is ordered he can make out a good defense. 58 Am. Jur. 2d, New Trial, § 159, p. 369. Defendant made no such showing in the present case. Therefore, defendant's contention that the trial court erred in overruling his motion for new trial on the charge of uttering a forged check is without merit.

It should also be noted that defendant did not move for a continuance when he discovered the alleged surprise, and the trial court was not aware, either prior to or during the trial, of defendant's contention that he needed more time to procure additional witnesses. While we have been unable to find any criminal cases in this state deciding the issue, we have held in a civil case that a motion for a new trial on the ground of surprise is properly overruled when a request for a continuance on that ground was not made at trial. Kehm v. Dumpert, 183 Neb. 568, 162 N. W. 2d 520 (1968). The general rule in other jurisdictions is that a defendant in a criminal case must ask for a continuance when confronted with surprise if he wishes to preserve that point. See 24 C. J. S., Criminal Law, § 1431, p. 31. The reason for this rule is that a party will not be permitted to remain silent, claim no surprise in the trial, speculate

on the verdict, and, when it is found against him, claim the right to a new trial on the ground of surprise. This rule is a sound one, and is particularly applicable in cases such as the present one, where the defendant discovered the surprise shortly before trial and claims that he needed additional time to procure other witnesses, yet did not move for a continuance. Defendant's failure to move for a continuance is a further reason for upholding the trial court's overruling of his motion for new trial on the ground of surprise.

The final issue in this case is whether the trial court erred in finding the defendant to be a habitual criminal. Defendant contends that section 29-2221, R. R. S. 1943, is unconstitutional, that the evidence produced by the State was insufficient, and that the FBI records were erroneously admitted in evidence because they are hearsay and such admission violated defendant's right to confront witnesses against him.

It has long been held that the habitual criminal law is constitutional, and defendant's contention to the contrary is erroneous. State v. Fowler, 193 Neb. 420, 227 N. W. 2d 589 (1975). Section 29-2221, R. R. S. 1943, provides that whoever has been twice convicted of crime, sentenced and committed to prison for terms of not less than 1 year shall, upon conviction of a felony committed in this state, be deemed a habitual criminal. Section 29-2222, R. R. S. 1943, provides that at "the hearing of any person charged with being an habitual criminal, a duly authenticated copy of the former judgment and commitment, from any court in which such judgment and commitment was had, for any of such crimes formerly committed by the party so charged, shall be competent and prima facie evidence of such former judgment and commitment. Section 25-1285, R. R. S. 1943, provides that a judicial record of a federal court "may be proved by the producing of the original, or

by a copy thereof, certified by the clerk or the person having the legal custody thereof, authenticated by his seal of office, if he have one."

The United States District Court records introduced in evidence in the present case met the requirements of the above sections, and constituted sufficient evidence to find the defendant to be a habitual criminal. See, State v. Addison, 197 Neb. 482, 249 N. W. 2d 746 (1977); State v. Micek, 193 Neb. 379, 227 N. W. 2d 409 (1975). As stated in State v. Roan Eagle, 182 Neb. 535, 156 N. W. 2d 131 (1968): "An authenticated record establishing a prior conviction of a defendant with the same name is prima facie sufficient to establish identity for the purpose of enhancing punishment; and, in the absence of any denial or contradictory evidence, is sufficient to support a finding by the court that the accused has been convicted prior thereto." The records in this case did establish prior convictions of a defendant with the same name, and under the above authorities and statutes, the evidence adduced by the State was sufficient to support the finding of the District Court that the defendant is a habitual criminal.

Defendant also contends that it was error to admit in evidence the FBI records because those records were hearsay evidence and their admission denied him the right to confront witnesses against him. Although there are no Nebraska cases precisely on point, numerous courts in other jurisdictions have held that certified copies of official records showing fingerprints may be received in evidence in a habitual criminal proceeding, and an expert may compare such fingerprints with the prints taken from the defendant at the time he was arrested on the habitual criminal charge. See Annotation, Evidence of Identity for Purposes of Statute as to Enhanced Punishment in Case of Prior Conviction, 11 A. L. R. 2d, § 11, at p. 892. We also note that under sections 27-1005 and 27-902, R. R. S. 1943, the contents of an

official record may be proved by a certified copy of such record. Finally, a record made by a public official of facts required to be observed and recorded pursuant to a duty imposed by law does not constitute hearsay evidence under section 27-803 (7), R. R. S. 1943. In the present case the FBI records were certified, and such records are required to be recorded pursuant to Title 28 U. S. C., § 534. The records were properly admitted in evidence under these circumstances. In any event, even if it were error to admit the FBI records in evidence, it was at most harmless error under section 29-2308, R. R. S. 1943, as such records were simply cumulative evidence in regard to defendant's guilt, which was already sufficiently established by the records of the United States District Court. State v. Roan Eagle, *supra*. See, also, State v. Addison, *supra*.

The contentions of the defendant are without merit, and the judgment of the District Court is therefore affirmed.

AFFIRMED.