JACK HUMPHREY, APPELLANT, V. NEBRASKA PUBLIC POWER
DISTRICT, A POLITICAL SUBDIVISION, APPELLEE.
503 N.W.2d 211

Filed July 23, 1993.    No. S-91-466.

William J. Erickson for appellant.

Larry R. Baumann, of Kelley, Scritsmier & Byrne, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

## I. INTRODUCTION

Upon being denied permanent employment by the defendant-appellee, Nebraska Public Power District (the district), the plaintiff-appellant, Jack Humphrey, brought suit alleging age discrimination in violation of the Act Prohibiting Unjust Discrimination in Employment Because of Age, Neb. Rev. Stat. § 48-1001 et seq. (Reissue 1988) (the state act), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (1988) (the federal act), as well as denial of due process in contravention of 42 U.S.C. § 1983 (1988). The trial court directed a verdict in favor of the district on the § 1983 cause, the jury returned a verdict in favor of the district on the discrimination causes under the state and federal acts, and a judgment was entered accordingly. Humphrey contends in this court that the trial court erred in (1) sustaining the district's

motion for a directed verdict on his § 1983 cause, (2) failing to grant his motions for directed verdict and judgment notwithstanding the verdict on his state and federal act causes, (3) excluding from evidence certain findings and conclusions of the Nebraska Equal Opportunity Commission (the commission), and (4) giving a particular jury instruction. We affirm.

## II. BACKGROUND

Humphrey, who was born August 22, 1935, was employed by the district as a temporary heating, ventilation, and air conditioning (HVAC) technician from July 8, 1985, to June 25, 1988. On or about September 8, 1987, Humphrey applied for the position of permanent HVAC technician III. However, 35-year-old David Einspahr was hired for that position as of February 1, 1988. Humphrey again applied for a permanent HVAC technician III position on June 9, 1988, but lost out to Christopher Kluthe, then 19 years old, who was hired as of July 1, 1988. Upon learning of Kluthe's promotion, Humphrey, on approximately June 28, quit his temporary employment with the district.

On September 26, 1988, Humphrey filed a complaint with the commission. In a determination filed on July 14, 1989, the commission found reasonable cause to believe that the district had discriminated against Humphrey because of his age, and this suit followed.

## III. ANALYSIS

With that brief background in mind, we move on to a consideration of each of Humphrey's assignments of error.

### 1. DIRECTED VERDICT ON § 1983 CAUSE

First, we address the challenge to the trial court's ruling directing a verdict in favor of the district on Humphrey's action under § 1983.

We begin by recalling that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. See, *Nichols v. Busse, ante* p. 811, 503 N.W.2d 173 (1993); *Sell v. Mary Lanning*

*Memorial Hosp.*, ante p. 266, 498 N.W.2d 522 (1993). However, in reviewing the action of a trial court, we must treat a motion for a directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. See, *Sell, supra*; *Five Points Bank v. Scoular-Bishop Grain Co.*, 217 Neb. 677, 350 N.W.2d 549 (1984).

The federal act makes it unlawful "for an employer—(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." § 623(a). In most respects, the state act closely parallels the federal act. See *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988).

Section 1983 provides, in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." *Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364, 1366 (4th Cir. 1989), *cert. denied* 493 U.S. 850, 110 S. Ct. 147, 107 L. Ed. 2d 106, declares: "Section 1983 does not in itself create any substantive rights. Rather, it provides a statutory basis to receive a remedy for the deprivation of a right 'secured by the Constitution and laws' of the United States by a person acting under color of state law."

A § 1983 action is foreclosed "where the 'governing statute provides an exclusive remedy for violations of its terms.' " *Pennhurst State School v. Halderman*, 451 U.S. 1, 28, 101 S. Ct. 1531, 67 L. Ed. 2d 694 (1981), quoting *Maine v. Thiboutot*, 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980) (Powell, J., dissenting). Thus, we must decide whether the federal act forecloses a private action brought under § 1983 to enforce rights specifically addressed and protected by the federal act.

A number of federal courts have concluded that the federal act is the exclusive remedy for age discrimination in federal employment. See, e.g., *Ray v. Nimmo*, 704 F.2d 1480 (11th Cir.

1983); *Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981); *Giles v. Equal Employment Opportunity Com'n*, 520 F. Supp. 1198 (E.D. Mo. 1981); *Christie v. Marston*, 451 F. Supp. 1142 (N.D. Ill. 1978). See, also, *Dodson v. U.S. Army Finance and Accounting Center*, 636 F. Supp. 894 (S.D. Ind. 1986). Moreover, this principle of preclusion extends to state and local governmental employees, for "the [federal act] and its amendments provide a comprehensive statutory remedy that may not be bypassed through the means of an action under 42 U.S.C. § 1983." *Izquierdo Prieto v. Mercado Rosa*, 894 F.2d 467, 469 (1st Cir. 1990). Accord, *Britt v. The Grocers Supply Co., Inc.*, 978 F.2d 1441 (5th Cir. 1992), *cert. denied* ____ U.S. ____, 113 S. Ct. 2929, 124 L. Ed. 2d 679 (1993); *Zombro, supra*; *Ring v. Crisp County Hosp. Authority*, 652 F. Supp. 477 (M.D. Ga. 1987); *Morgan v. Humboldt County School Dist.*, 623 F. Supp. 440 (D. Nev. 1985); *McCroan v. Bailey*, 543 F. Supp. 1201 (S.D. Ga. 1982).

For example, in *Zombro*, the plaintiff, a member of the city police department, alleged that he was unlawfully transferred from one department to another because of his age. The plaintiff brought an age discrimination action under § 1983 (1982), 42 U.S.C. § 1985 (1982), and the 14th Amendment to the U.S. Constitution. The plaintiff did not seek remedy under the federal act.

In reaching the conclusion that the federal act provides the exclusive remedy for claims of age discrimination, the *Zombro* court wrote:

> It is implausible that Congress would have intended to preserve the private cause of action under § 1983 for age discrimination when that cause of action would severely undermine, if not debilitate, the enforcement mechanism created by Congress under the [federal act]. Congress, we believe, did not intend to permit plaintiffs to bypass the comprehensive statutory scheme clearly embodied in the language and legislative history of the [federal act] merely because they are employed by an agency operating under color of state law.

*Zombro*, 868 F.2d at 1369. We agree and, thus, conclude that the federal act provides the exclusive judicial remedy for claims

of age discrimination.

But this does not end our inquiry, for Humphrey attempts to circumvent the aforementioned preemption principle by claiming that his § 1983 claim does not sound in age discrimination, but, rather, seeks to remedy the deprivation of a property interest. Indeed, if Humphrey has alleged facts which indicate that the district violated some federally secured right other than those already protected by the federal act, a separate § 1983 action could lie. See *Morgan, supra*.

However, the property interest claims upon which Humphrey relies are found in a provision of the district's employee handbook promising to afford equal opportunity to district employees regardless of age. Moreover, Humphrey points to the district's policy of compliance with a presidential executive order requiring federal contractors to take affirmative action to eliminate age discrimination. The essence of both of these contentions is the district's policy of not discriminating on the basis of age. Thus, Humphrey's § 1983 claim mirrors his age discrimination claim under the federal act, i.e., that he was denied the positions because of his age. Because Humphrey's § 1983 claim is grounded solely in age discrimination, it is precluded by the federal act. Accordingly, the trial court was correct in directing a verdict in favor of the district on Humphrey's § 1983 claim.

## 2. DENIAL OF DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT ON STATE AND FEDERAL ACT CAUSES

Next, we address Humphrey's assertion that the trial court erred in failing to enter a verdict in his favor on his causes under the state and federal acts and in failing to grant him a judgment notwithstanding the jury's verdict.

"On a motion for judgment [non obstante veredicto, or notwithstanding the verdict], the movant is deemed to have admitted as true all the relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence."

*Pugh v. Great Plains Ins. Co.*, 239 Neb. 171, 172, 474 N.W.2d 677, 679 (1991). In order to sustain a motion for directed verdict or judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Patterson v. Swarr, May, Smith & Anderson*, 238 Neb. 911, 473 N.W.2d 94 (1991).

The state act protects individuals who are "at least forty years of age but less than seventy years of age." § 48-1003. Section 48-1004(a) of the state act provides that it is unlawful for an employer "[t]o refuse to hire, to discharge, or otherwise to discriminate against any individual with respect to his terms, conditions, or privileges of employment, otherwise lawful, because of such individual's age, when the reasonable demands of the position do not require such an age distinction."

While federal protection is now provided to all individuals who are at least 40 years of age, § 631, we, as a general rule, in other respects conform our reading of the state act to the reading of the federal act. *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988).

In cases arising under the state act, we have held that

> although the ultimate burden of persuasion by a preponderance of the evidence at all times remains with the plaintiff, the method of proof is for the plaintiff to prove a prima facie case; if the plaintiff succeeds in so doing, the defendant has the burden of articulating some legitimate, nondiscriminatory reason for its action. Should the defendant succeed in so doing, the plaintiff must establish by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Allen*, 228 Neb. at 506, 423 N.W.2d at 427-28. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). (As recently clarified in *St. Mary's Honor Center v. Hicks*, _____ U.S. _____, _____ S. Ct. _____, 125 L. Ed. 2d 407 (1993), *McDonnell Douglas Corp.* allocates the burden of production and the order for the presentation of the evidence; the ultimate burden of persuasion, however, rests on the plaintiff.)

To establish a prima facie case, an age discrimination

plaintiff must establish that (1) he or she was in the protected group, (2) he or she was subjected to an adverse employment action, (3) he or she was qualified for the position, and (4) the person who received the position was outside of the protected group. See, *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723 (8th Cir. 1992), *cert. denied* ____ U.S. ____, 113 S. Ct. 635, 121 L. Ed. 2d 566; *Stein v. National City Bank*, 942 F.2d 1062 (6th Cir. 1991); *Allen, supra.* The ultimate issue is whether age was a determining factor in the employer's decision. *U.S.E.E.O.C. v. Century Broadcasting Corp.*, 957 F.2d 1446 (7th Cir. 1992). See *Barber v. American Airlines, Inc.*, 791 F.2d 658 (8th Cir. 1986), *cert. denied* 479 U.S. 885, 107 S. Ct. 278, 93 L. Ed. 2d 254.

### (a) First Permanent Position

With regard to the first position Humphrey was denied, three of the four elements of a prima facie case are clearly satisfied because the 52-year-old Humphrey came within the protected group; he was subjected to an adverse employment action by being denied the permanent position; and the position went to Einspahr, who was 35 years of age at the time he was hired and thus was not a member of the protected group. Consequently, the issue on which we focus is whether Humphrey was in fact qualified for the permanent position. Moreover, even if Humphrey established a prima facie case, he is required to then prove that the district's legitimate reason for not hiring him (i.e., that Einspahr was better qualified) was pretextual.

The record demonstrates that Humphrey possessed some of the skills necessary for the position, for he had received training in vibration analysis, basic refrigeration, and asbestos. Moreover, Humphrey was described as being "exceptional" at tubing. In his response on a job posting form, Humphrey stated that he realized he needed training in some areas and was willing to take more training and schooling. On the other hand, aside from on-the-job training, Einspahr had received no training for the position.

Furthermore, some evidence exists to show that Humphrey was a more productive employee than Einspahr. Admitted at trial were two volumes of job orders and a job order summary, showing that in the years 1986 and 1987, Humphrey completed

a higher percentage of job orders assigned than did Einspahr. Humphrey did not receive any criticism or negative verbal evaluations during his temporary employment and was described as being "punctual," whereas Einspahr was reprimanded about occasional tardiness.

Humphrey's shortcoming appears to have been his inability to use the computer system, which was used to determine the location, quantity, and item number of spare parts. The job description for the position specified that the ability to operate computer terminals to obtain information was "necessary to perform [the] job in a satisfactory manner." An electrical maintenance supervisor stated that computer literacy was "pretty essential" because "[e]verything is on the computer." Humphrey admitted that the computer was difficult for him and that he had problems using it, choosing instead to rely upon computer printouts. Einspahr, on the other hand, was able to use the computer system.

Finally, district officials were of the view that Einspahr possessed characteristics of leadership that Humphrey lacked. When Humphrey and Einspahr were sent out on jobs together, the HVAC foreman observed that

> normally [Einspahr] was the one that kind of took control. [He] was more aggressive just by nature than [Humphrey] and so therefore, I could see that once they left the office, although they were tech III type of individuals, that [Einspahr] was going to be the one that was kind of going to run the show.

Einspahr also displayed a zest for learning that Humphrey did not. Einspahr was described by a district hiring official as "more aggressive in his eagerness to want to learn" than Humphrey. For example, an HVAC foreman had given a book on electric theory to both Einspahr and Humphrey. When later asked if he had the book, Humphrey stated that he was not sure where he had placed it. Einspahr, however, asked questions about the reading and appeared to the foreman to have increased his knowledge in electricity, whereas Humphrey had not. The foreman also found that Humphrey had difficulty retaining information.

Although district officials admittedly found the decision to

hire Einspahr instead of Humphrey to be "a close call," they concluded that Einspahr "was doing a little better job."

### (b) Second Permanent Position

Addressing the second position Humphrey was denied, we again discover that three of the four elements of the prima facie case are clearly established, since Humphrey was a member of the protected group; he was subjected to an adverse employment action; and Kluthe, who was 19 years old at the time he was hired for the permanent position, was outside of the protected group.

Kluthe received an associate's degree in air conditioning technology from a community college in December 1988. In Humphrey's own words, Kluthe's "technical training was very good." Although Kluthe was described by a coworker as "cocky," it was conceded that he "was a step ahead of probably most everybody in the shop."

An electrical maintenance supervisor for the district testified that the HVAC foreman stated that Humphrey, because of his age, would not be there in a couple of years and thus should not be hired. The supervisor told the foreman that they could not consider Humphrey's age.

Although the decision between Humphrey and Einspahr was a close one, there was little question when it came to Kluthe versus Humphrey. Kluthe "impressed" and "amazed" the supervisor because "he was coming in within a month making recommendations for changes to the entire system because he found things wrong." The HVAC foreman testified that it was "very evident" that Kluthe was the better HVAC technician.

As the aforementioned discussion illustrates, it is in dispute whether Humphrey established that he was qualified for the position, a necessary element of an age discrimination prima facie case. Even assuming that Humphrey established a prima facie case, the evidence presented an issue as to whether the district articulated legitimate, nondiscriminatory reasons for its decisions or whether those reasons were merely pretextual. The evidence was not such that reasonable minds could draw but one conclusion: that age was a determining factor in the district's decisions to hire Einspahr and Kluthe rather than

882

Humphrey. Because it is the prerogative of the jury, as the trier of fact, to resolve conflicts in the evidence and to determine the weight and credibility to be given to testimony of witnesses, *Beauford v. Father Flanagan's Boys' Home*, 241 Neb. 16, 486 N.W.2d 854 (1992), and *Worth v. Schillereff*, 233 Neb. 628, 447 N.W.2d 480 (1989), the evidence clearly presented a submissible issue for the jury. The trial court thus properly denied Humphrey's motion for directed verdict and request for judgment notwithstanding the verdict.

### 3. ADMISSIBILITY OF COMMISSION FINDINGS AND CONCLUSIONS

Humphrey also claims that the trial court erred in excluding from the evidence the commission's investigative reports and a portion of its determination. Although the trial court received in evidence portions of the determination containing the commission's findings, it excluded investigative reports of onsite interviews with district officials and the commission's determination that reasonable cause existed to believe that the district discriminated against Humphrey on the basis of age.

Neb. Rev. Stat. § 27-803 (Reissue 1989) provides, in relevant part:

Subject to the provisions of section 27-403 [permitting the exclusion of certain relevant and probative evidence], the following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(7) Upon reasonable notice to the opposing party prior to trial, records, reports, statements or data compilations made by a public official or agency of facts required to be observed and recorded pursuant to a duty imposed by law, unless the sources of information or the method or circumstances of the investigation are shown by the opposing party to indicate a lack of trustworthiness.

We have held admissible under that provision a record of the revocation of a motorist's license, *State v. Rowland*, 234 Neb. 846, 452 N.W.2d 758 (1990), and records showing fingerprints, *State v. Mills*, 199 Neb. 295, 258 N.W.2d 628 (1977). Unlike the material Humphrey here seeks to introduce, the records admitted in the foregoing cases reflected, in one instance, a

firsthand factual observation, and in the other, a mere depiction of physical characteristics. In contrast, Humphrey seeks to introduce not facts required to be observed and recorded pursuant to law, as contemplated by § 27-803(7), but investigative data, opinions, and conclusions drawn therefrom.

We recognize that under Fed. R. Evid. 803(8)(C), a number of federal courts have held that the admissibility of material such as Humphrey sought to introduce is entrusted to the discretion of the trial court. E.g., *Barfield v. Orange County*, 911 F.2d 644 (11th Cir. 1990), *cert. denied* ___ U.S. ___, 111 S. Ct. 2263, 114 L. Ed. 2d 715 (1991); *Tulloss v. Near North Montessori School*, 776 F.2d 150 (7th Cir. 1985); *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304 (8th Cir. 1984), *cert. denied* 469 U.S. 1041, 105 S. Ct. 525, 83 L. Ed. 2d 413; *Nulf v. International Paper Co.*, 656 F.2d 553 (10th Cir. 1981); *Walton v. Eaton Corp.*, 563 F.2d 66 (3d Cir. 1977). But it must be remembered that the federal rule permits, in civil actions, the introduction of "factual findings resulting from an investigation made pursuant to authority granted by law . . . ." Our § 27-803(7) does not so permit, and for good reason, for the merit of such investigations is largely in the mind of the reader. Compare *Plummer v. Western Intern. Hotels Co., Inc.*, 656 F.2d 502, 505 (9th Cir. 1981) ("[a]n [agency] determination, prepared by professional investigators on behalf of an impartial agency, has been held to be a highly probative evaluation of an individual's discrimination complaint"), with *Johnson*, 734 F.2d at 1309 ("[agency] determinations are not homogeneous products; they vary greatly in quality and factual detail").

Thus, the trial court should have excluded all of the material generated by the commission. However, its error in this regard inured to Humphrey's benefit and thus provides him with no basis for appellate relief.

### 4. JURY INSTRUCTION

Humphrey claims that the trial court erred in a particular instruction to the jury. Therein, the trial court advised the jury that Humphrey had the burden in the first instance to prove that he was qualified for the positions for which he had applied

and that he had been passed over by virtue of his age, and that if Humphrey had met that initial burden, it became the district's burden to prove that it had a legitimate, nondiscriminatory reason for hiring Einspahr and Kluthe rather than Humphrey.

The questioned portion of the instruction then told the jury:

> If you have determined that [Humphrey] has met his initial burden of proof [as set forth previously], and that the [district] has met its burden of proof [as set forth previously], then [Humphrey] must prove by the greater weight of the evidence that:
>
> . . . The reason or reasons articulated by the [district] for not employing [Humphrey] as a permanent HVAC technician during 1988 are pretextual in nature, *and* that the stated reason or reasons for the [district's] actions were not the only reason or reasons, and that the age of [Humphrey] made a difference in the [district's] employment decision.

(Emphasis supplied.)

We first observe that much of the instruction should not have been given at all. That an age discrimination plaintiff must first establish that he or she was qualified for the position for which he or she was rejected and that he or she was disadvantaged by virtue of age are matters for the trial court to consider in determining whether a plaintiff has established a prima facie case. If the plaintiff has done so and the defendant has articulated a legitimate, nondiscriminatory reason for its action, then a submissible case has been made and the jury need only be instructed that it is the plaintiff's burden to prove that the reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. See *St. Mary's Honor Center v. Hicks*, ____ U.S. ____, ____ S. Ct. ____, 125 L. Ed. 2d 407 (1993) (employer's production of evidence of nondiscriminatory reason, whether ultimately persuasive or not, satisfies employer's burden of production and rebuts presumption raised by employee's prima facie case).

The matter is akin to that presented in *State v. McCurry*, 228 Neb. 841, 424 N.W.2d 364 (1988). We therein declared that because whether *Miranda* warnings had been properly administered and whether the criminal defendant had waived

those rights were questions of law, it was inappropriate to instruct the jury to disregard the defendant's custodial statement to law enforcement officers unless it found the foregoing two conditions to have been met.

That having been clarified, we return to Humphrey's claim that the emphasized conjunctive word "and" in the questioned portion of the instruction at issue should have been the disjunctive word "or." He argues that this mistake placed a "double burden" on him.

He concedes, however, that he failed to object to the instruction at trial and admits that he did not raise this issue in his motion for new trial. We have ruled that the "[f]ailure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error." *Paro v. Farm & Ranch Fertilizer, ante* p. 390, 395, 499 N.W.2d 535, 540 (1993). Accordingly, we consider only whether the alleged mistake constituted plain error indicative of a probable miscarriage of justice.

> Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. Plain error may be asserted for the first time on appeal or be noted by the appellate court on its own motion.

*Katskee v. Nevada Bob's Golf of Neb.*, 238 Neb. 654, 661, 472 N.W.2d 372, 379 (1991).

In his attempt to demonstrate that the claimed defect amounts to plain error, Humphrey calls our attention to *Enyeart v. Swartz*, 218 Neb. 425, 355 N.W.2d 786 (1984), a case involving an automobile-motorcycle collision. The court therein remanded the cause for a new trial because the trial court failed to provide the jury with an instruction on the definition of "proximate cause." That is not the situation here: the trial court did not fail to instruct on an issue essential to the resolution of the case; it described the same requirement twice.

The second segment of the questioned portion of the instruction, that the stated reason or reasons for the district's

actions were not the only reason or reasons, merely restates the first segment of that portion of the instruction, i.e., that the reason or reasons articulated by the district for not employing Humphrey were pretextual in nature. "Pretext" has been defined as an "[o]stensible reason or motive assigned or assumed as a color or cover for the real reason or motive; false appearance, pretense." Black's Law Dictionary 1187 (6th ed. 1990). Indeed, the jury, after beginning its deliberations, requested an instruction from the trial court on the definition of "pretextual." The parties stipulated to provide the jury with a photocopy of the definition of "pretext" found in Webster's Ninth New Collegiate Dictionary 932 (1985): "a purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs." Thus, if the jury found that the reasons were pretextual, it can necessarily be said that those were not the only reason or reasons. While the trial court gave the jury more information than necessary by advising them as to what constitutes a prima facie case, we cannot under the circumstances say it committed plain error.

## IV. JUDGMENT

The record failing to sustain any of Humphrey's assignments of error, we affirm the judgment of the trial court.

AFFIRMED.